# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                        No. CR 25-0113 JB

DONALD BENALLY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the "Marsden Motion" and Request to Proceed in Pro Se for Self-Representation, or Alternatively Substitute Counsel, filed October 16, 2025 (Doc. 107)("Motion"); and (ii) the Request to Proceed in Pro Se, filed October 16, 2025 (Doc. 108)("Request"). The Court holds a hearing on October 29, 2025. Clerk's Minutes at 1 (Doc. 111)("Clerk's Minutes"); Draft Hearing Transcript of Proceedings at 1 (taken October 29, 2025)(Court)("2025 Tr.").[1] The primary issue is whether Defendant Donald Benally may proceed pro se on a temporary basis while he finds new representation, where his current counsel, Ms. Mallory Margaret Gagan, remains counsel of record and where no substitute counsel has entered an appearance. The Court concludes that Benally's request does not constitute a clear and unequivocal waiver of his right to counsel. Accordingly, the Court denies the request without prejudice, and Ms. Gagan will continue to represent Benally unless and until substitute counsel appears.

## FACTUAL & PROCEDURAL BACKGROUND

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

In discussing the Factual Background, the Court takes its facts from the redacted Indictment, filed January 22, 2025 (Doc. 2)("Indictment").  The Court makes no findings of fact; rather, it recites the following facts as an overview and context regarding the complexity of Benally's case.  In discussing the Procedural Background, the Court discusses the Motion, the Request, and the representations that Benally makes at the 2025 hearing.  Plaintiff United States of America does not file a response to the Motion or to the Request.

1.      **The Indictment.**

On January 22, 2025, the Grand Jury files the Indictment.  See Indictment at 1.  The Indictment alleges that, on or about January 1, 2018, through November 11, 2020, Benally along with his coconspirators conspire to violate 28 U.S.C. § 841(a)(1).  See Indictment at 1-2. Specifically, the United States alleges that Benally manufactures and possesses with the "intent to distribute, a controlled substance."  Indictment at 2.  The amount of marijuana the conspiracy involves and is attributable to each of the three co-Defendants "as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, is 1,000 kilograms and more of a mixture and substance containing a detectable amount of marijuana and 1,000 and more marijuana plants regardless of weight."  Indictment at 2.

As a part of the conspiracy, Benally and the coconspirators manage "twenty-five marijuana farms" in Shiprock, New Mexico.  Indictment ¶ 14, at 4.  In managing those farms, Benally and the coconspirators "recruited and utilized Chinese workers to cultivate the marijuana farms." Indictment ¶ 15, at 4.  Benally and the coconspirators protect the fields with "armed security guards."  Indictment ¶ 17, at 5.  Eventually, Benally and the coconspirators "utilized the Chinese workers to transport processed marijuana from the marijuana farms across state lines."  Indictment ¶ 21, at 5.

**2.      Benally's Motions to Proceed Pro Se.**

On October 16, 2025, Benally files the Motion and the Request. See Motion at 1; Request at 1.[2]  In the Motion, Benally "files 'Marsden Motion'[3] and his request to proceed in Pro Se for Self-representation."  Motion at 1.  The Request restates the Motion, asking the Court "to proceed in Pro Se in the above-entitled case."  Request at 1.  The thrust of Benally's argument is that he has a Constitutional right to proceed pro se, see Motion at 1, and that "he has a major disagreement about how the case should be handled and type of legal strategies to be used" with his attorney, Motion at 2.

**3.      The Hearing.**

On October 29, 2025, the Court holds a hearing on the Motion and the Request.  See Clerks Minutes at 1.  At the hearing and after the United States leaves the room, so the Court can speak to Benally outside the United States presence, the Court asks Benally if he "really want[s] to proceed pro se"?  2026 Tr. at 13:3-5 (Court).  Benally responds that he wants to proceed pro se only while he finds another attorney.  See 2026 Tr. at 13:6-7 (Benally)("No, Your Honor I wanted to proceed pro se pending, I'm in the process of getting a private attorney.").  The Court, not wanting Benally's search for counsel to interrupt his representation, asks if he is okay with Ms. Gagan continuing to represent him until he finds new counsel.  See 2026 Tr. at 15:22-16:21

---

[2] Benally does not format the Motion or the Request with page numbers.  See Motion 1-8; Request 1-2.  Accordingly, the Court uses the electronic case filings' page numbers when referencing the Motion and the Request.

[3] A "Marsden Motion" is the procedural title given to motions in California State court, names after People v. Marsden, 2 Cal. 3d 118, 84 Cal.Rptr. 156, 465 P.2d 44 (1970), "when a criminal defendant . . . seeks to discharge appointed counsel and substitute another attorney." Roberts v. Broomfield, 637 F. Supp. 3d 872, 999-1000 (E.D. Cal. 2022)(Drozd, J).  See 2026 Tr. at 12:13-16 (Benally)("Your Honor, [] [Marsden] is a motion, Your Honor, that it's a request to discharge your lawyer your attorney . . . .").

(Court).   Benally consents to Ms. Gagan's continued representation.  See 2026 Tr. at 16:22 (Benally)("Okay, Your Honor.").  See 2026 Tr. at 16:23-24 (Court, Benally)("The Court: Does that make sense. The Defendant: Yes.").  Ms. Gagan agrees to "continue representing Mr. Benally throughout this case and the [sic] any others that may come." 2026 Tr. 17:13-15 (Gagan).  Benally acknowledges that Ms. Gagan is "a very efficient lawyer," and he can make his Constitutional argument with the new counsel when he hires.  2026 Tr. at 18:12-14 (Benally).   After this exchange, Benally consents to the Court denying, without prejudice, the Motion and the Request. See 2026 Tr. 18:15-19:18 (Court, Benally).

## LAW REGARDING THE EFFECTIVE ASSISTANCE OF COUNSEL, SELF-REPRESENTATION, AND ATTORNEY CONFLICTS OF INTEREST

The Sixth Amendment of the Constitution of the United States of America grants criminal defendants the right to the effective assistance of counsel.  See U.S. Const. amend. VI.  One aspect of the effective assistance of counsel is the absence of conflicts of interest.  The Sixth Amendment also grants defendants the right to counsel of their choice.  When the right to conflict-free counsel is in tension with the right to counsel of one's choice, a defendant may knowingly and voluntarily waive the former to vindicate the latter.  A court, however, has discretion to reject such a waiver. Defendants also may represent themselves, if they make their waiver of their right to counsel voluntarily, knowingly, and intelligently.

### 1.    The Right to Conflict-of-Interest-Free Counsel.

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI. Furthermore,

> [t]hat a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command . . . .  An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the

role necessary to ensure that the trial is fair.

Strickland v. Washington, 466 U.S. 668, 685 (1984). "Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest." Strickland v. Washington, 466 U.S. at 688. "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). A violation of applicable ethical rules, however, does not necessarily amount to an actual conflict. See United States v. Gallegos, 39 F.3d 276, 279 (10th Cir. 1994)("[I]t is apparent also that a violation of the rules [of professional conduct] will not in itself constitute a constitutional violation under Cuyler and related cases."). Instead, "'[a]n actual conflict exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client.'" United States v. Bolivar, No. CIV 12-0128, 2012 WL 3150430, at *11 (D.N.M. July 20, 2012)(Browning, J.)(quoting Perillo v. Johnson, 205 F.3d 775, 781 (5th Cir. 2000)). When a conflict of interest significantly impacts defense counsel's performance, reversal is automatic; the law requires no further showing of prejudice. See Strickland v. Washington, 466 U.S. at 692.

Reversal is also automatic when a defendant objects to multiple representation -- i.e., one lawyer representing multiple defendants in a single proceeding -- and a trial judge neither acts to remove the potential conflict of interest by appointing separate counsel nor "take[s] adequate steps to ascertain whether the risk [is] too remote to warrant separate counsel." Holloway v. Arkansas, 435 U.S. 475, 484 (1978). See Mickens v. Taylor, 535 U.S. 162, 168 (2002)(Scalia, J.)("Holloway thus creates an automatic reversal rule only where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no

conflict."). See also United States v. Perez, 325 F.3d 115, 125 (2d Cir. 2003)("[A]n attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" (quoting United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998))).

Although "a possible conflict inheres in almost every instance of multiple representation," a trial court has an "affirmative duty to inquire into the propriety of multiple representation" only when it "knows or reasonably should know that a particular conflict exists." Cuyler v. Sullivan, 446 U.S. at 346-48. See United States v. Rogers, 209 F.3d 139, 143 (2d Cir. 2000)("[A] court that learns of a possible conflict must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all."). If a trial court fails to undertake that inquiry, however, reversal is not automatic. See Mickens v. Taylor, 535 U.S. at 173-74 ("[S]ince the trial court's failure to make the Sullivan-mandated inquiry does not reduce the petitioner's burden of proof; it was at least necessary, to void the conviction, for petitioner to establish that the conflict of interest adversely affected his counsel's performance."). When the government is aware of a conflict of interest, it "has a duty to bring it to the court's attention and, if warranted, move for disqualification." United States v. Migliaccio, 34 F.3d 1517, 1528 (10th Cir. 1994). Defense counsel has a similar duty. See Cuyler v. Sullivan, 446 U.S. at 346 ("Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial.").

"These principles concerning conflicts of interest are not restricted to cases of joint representation of co-defendants at a single trial." United States v. Winkle, 722 F.2d 605, 610 (10th Cir. 1983). "[I]n a case of joint representation of conflicting interests the evil -- it bears repeating

-- is in what the advocate finds himself compelled to *refrain* from doing," Holloway v. Arkansas, 435 U.S. at 490 (emphasis in the original), and that same evil "is a potential problem in cases where a defendant's attorney previously represented a Government witness," United States v. Winkle, 722 F.2d at 610. Accordingly, the United States Court of Appeals for the Tenth Circuit is "persuaded by the views expressed in Ross v. Heyne, 638 F.2d 979, 983 (7th Cir. 1980), that an actual conflict would arise where defense counsel is unable to cross-examine a Government witness effectively because the attorney also represented the witness." United States v. Winkle, 722 F.2d at 610. See Ross v. Heyne, 638 F.2d at 983 ("An actual conflict would arise where defense counsel is unable to cross-examine a prosecution witness effectively because the attorney also represented the witness."); id. ("The problem that arises . . . is that the attorney may have privileged information obtained from the witness that is relevant to cross-examination, but which he refuses to use for fear of breaching his ethical obligation to maintain the confidences of his client."). The Tenth Circuit, accordingly, concludes that it "should apply the conflicts principles from the cases of multiple representation of defendants here where the defense counsel in this criminal trial had represented the principal Government witness in litigation with a factual relationship to some issues in this criminal case," such that, "if the defendant can show that his attorney's previous representation of the witness adversely affected the adequacy of the defendant's representation, then defendant need not demonstrate prejudice to obtain relief." United States v. Winkle, 722 F.2d at 610.

There is not, however, a "per se rule prohibiting representation of the defendant by counsel who has previously represented a government witness in a related case." United States v. Bowie, 892 F.2d 1494, 1502 (10th Cir. 1990). Instead, a court must determine "whether an actual conflict adversely affected defense counsel's performance -- that is, a conflict existed that might have

foreclosed a specific and seemingly valid or genuine strategy or tactic in the handling of th[e] witness." United States v. Bowie, 892 F.2d at 1502. Additionally, a court does not need to make that determination if "the *witness* waived any attorney-client privilege that might have restricted defense counsel's cross-examination," or if the "*defendant* had knowledge of his counsel's prior representation of the government witness and waived his right to counsel free of such conflicts." United States v. Bowie, 892 F.2d at 1502 (emphasis in original). See Church v. Sullivan, 942 F.2d 1501, 1512 (10th Cir. 1991)("On remand, the district court should determine whether either of two waivers occurred because if Green 'waive[d] his attorney-client privilege, then any potential conflict is removed[,]' and further, Church may have 'waived his right to counsel free of such conflicts.'" (alterations in original)(quoting United States v. Bowie, 892 F.2d at 1502)). It is worth noting, however, that, while a defendant's waiver suffices, even without a witness' waiver, with respect to the Sixth Amendment's effective-assistance-of-counsel guarantee, a violation of professional ethical rules can still occur. See United States v. Gallegos, 39 F.3d at 279 (considering the application of ethical rules to an ineffective-assistance-of-counsel claim and stating that "[i]t is apparent that some elements therein bear on the constitutional issue," but concluding that "it is apparent also that a violation of the rules will not in itself constitute a constitutional violation under Cuyler and related cases").

The United States Court of Appeals for the District of Columbia explains what a trial court should do when determining whether "a potential conflict reaches the point at which disqualification is warranted" in the context of successive representation:

> [T]he trial court should "examine whether the subject matter of the first representation is substantially related to that of the second," whether "the conflict could cause the defense attorney improperly to use privileged communications in cross-examination," and whether "the conflict could deter the defense attorney from intense probing of the witness on cross-examination to protect privileged

communications with the former client.

Pinkney v. United States, 851 A.2d at 487 (quoting United States v. Ross, 33 F.3d 1507, 1523 (11th Cir. 1994)).   See United States v. Roach, 912 F. Supp. 2d 1153, 1172-73 (D.N.M. 2012)(Browning, J.)(applying Pinkney v. United States).  "When a district court finds that counsel has a conflict of interest, real or potential, it retains substantial latitude to disqualify counsel." United States v. McKeighan, 685 F.3d at 968 (quoting United States v. Collins, 920 F.2d at 627). The United States Court of Appeals for the Seventh Circuit holds that, before disqualifying counsel based on a potential conflict, a district court should "evaluate (1) the likelihood the conflict will actually occur; (2) the severity of the threat to counsel's effectiveness; and (3) whether there are alternative measures available other than disqualification." United States v. Turner, 594 F.3d 946, 952 (7th Cir. 2010).  The Courts of Appeals review a district court's ruling regarding a defendant's right to counsel for abuse of discretion.  See United States v. McKeighan, 685 F.3d at 968.  See also Wheat v. United States, 486 U.S. at 164 ("The evaluation of the facts and circumstances regarding a defendant's right to counsel must be left primarily to the informed judgment of the trial court.").

The Court previously concludes that an attorney does not have an actual or a serious potential conflict of interest in representing a husband in criminal case when the attorney previously represents both a husband and wife in a civil case.  See United States v. Roach, 912 F. Supp. 2d 1153, 1171-72 (D.N.M. 2012)(Browning, J).  Of particular importance to the Court is that the attorney representing the husband discloses to the wife's new attorney all information he learns during the course of his civil representation, and both attorneys represent that they do "not see any potential conflict of interest arising down the road."   United States v. Roach, 912 F. Supp. 2d at 1171.  The Court also determines that no disqualifying conflict exists where there

is only a possibility that an attorney's former client may testify against her current client, and because the former representation is "unrelated to the charges in this case." United States v. Bolivar, 2012 WL 3150430, at *13 (D.N.M. July 20, 2012)(Browning, J.)("That the cases are unrelated provides a strong basis for determining that any potential conflict is not so serious as to require disqualification.").

### 2.        The Right to Counsel of One's Choice.

The Sixth Amendment's "essential aim" "is to guarantee an effective advocate for each criminal defendant." Wheat v. United States, 486 U.S. at 159. Part of that guarantee is the defendant's right to choose the counsel to represent them. See United States v. McKeighan, 685 F.3d 956, 966 (10th Cir. 2012)(stating that the Sixth Amendment's "guarantee includes the 'right to be represented by an otherwise qualified attorney whom the defendant can afford to hire, or who is willing to represent the defendant'")(quoting Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-25 (1989)). See also United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006)(Scalia, J.)("[A]n element of [the Sixth Amendment] right is the right of a defendant who does not require appointed counsel to choose who will represent him."). Wrongly depriving a defendant of chosen counsel's representation requires reversal no matter whether the error prejudices the defendant. See United States v. McKeighan, 685 F.3d at 966 (quoting United States v. Gonzalez-Lopez, 548 U.S. at 146-50).

The Supreme Court of the United States of America's precedent indicates that indigent defendants are unable to choose their counsel. See Caplin & Drysdale, Chartered v. United States, 491 U.S. at 624 ("Petitioner does not, nor could it defensibly do so, assert that impecunious defendants have a Sixth Amendment right to choose their counsel."). See also Luis v. United States, 136 S. Ct. 1083, 1089 (2016)(Breyer, J.)(plurality opinion)("[A]n indigent defendant, while

entitled to adequate representation, has no right to have the Government pay for his preferred representational choice."); United States v. Gonzalez-Lopez, 547 U.S. at 144 ("We have previously held that an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him.").   Consequently, indigent criminal defendants "have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."  Caplin & Drysdale, Chartered v. United States, 491 U.S. at 624.  That conclusion receives significant academic criticism.  See, e.g., Janet Moore, The Antidemocratic Sixth Amendment, 91 Wash. L. Rev. 1705, 1707 (2016)("On hearing that indigent defendants have no right to choose their lawyers, the Chief Justice [John Roberts] asked, 'Why not?'  The correct answer is that there is no good reason to discriminate against poor people in the vindication of this fundamental constitutional right.")(quoting United States v. Gonzalez-Lopez, Transcript of Oral Argument at 34, 548 U.S. 140 (2006)(No. 05-352)); Stephen J.  Schulhofer & David D. Friedman, Rethinking Indigent Defense: Promoting Effective Representation Through Consumer Sovereignty and Freedom of Choice for All Criminal Defendants, 31 Am. Crim. L. Rev. 73, 109-10 (1993); Peter W. Tague, An Indigent's Right to the Attorney of his Choice, 27 Stan. L. Rev. 73 (1974).

The Supreme Court does not explain why indigent defendants have no right to choose their attorney, but it apparently stems from a concern for attorney autonomy: "[A] defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant."  Wheat v. United States, 486 U.S. at 159.  Allowing indigent defendants to choose their attorney threatens the public purse by forcing the government to pay for top tier representation, e.g., Johnnie Cochran, in every case.  See Luis v. United States, 136 S. Ct. at 1089 ("[A]n indigent defendant, while entitled to adequate representation, has no right to have the

Government pay for his preferred representational choice."). When he was a judge on the United States Court of Appeals for the Seventh Circuit, Richard Posner articulates an explanation sounding in law and economics: "The services of the criminal defense bar cannot be auctioned to the highest bidder among the indigent accused-by definition, indigents are not bidders. But these services must be allocated somehow; indigent defendants cannot be allowed to paralyze the system by all flocking to one lawyer." United States v. Ely, 719 F.2d 902, 905 (7th Cir. 1983).

Attorney autonomy, funding constraints, and resource-allocation concerns fail to explain, however, why indigent criminal defendants should not be able to choose -- subject to the same constraints that apply to non-indigent defendants, i.e., a trial judge's ability to "deem a chosen lawyer to be unqualified to handle the case, unavailable to proceed in a timely manner without disrupting the court's docket, or unable to cure a conflict of interest," Moore, supra 91 Wash. L. Rev. at 1710-11 -- their counsel from among those attorneys willing to take their case at the generally applicable rates for appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A(d), or analogous State legislation. The Court is reluctant to say that the Sixth Amendment requires the government to give indigent defendants that right, but, as a matter of public policy, such a right does not threaten attorney autonomy, because an indigent criminal defendant can select only a lawyer willing to take the case. Nor does such a right threaten the public purse, because the government compensates a defendant-chosen lawyer at the same rate -- and with the same total-expense constraints, see 18 U.S.C. § 3006A(d)(2) -- as a government-appointed lawyer receives. Defense lawyers' willingness to take particular cases, or the lack thereof, and the "mundane case-management considerations" that restrict any criminal defendant's "right to be represented by counsel of choice" address resource-allocation concerns:

> If a trial judge schedules a trial to begin on a particular date and defendant's counsel
> of choice is already committed for other trials until some time thereafter, the trial

> judge has discretion under appropriate circumstances to refuse to postpone the trial date and thereby, in effect, to force the defendant to forgo counsel of choice.

United States v. Gonzalez-Lopez, 548 U.S. at 155.

The Supreme Court recognizes that indigent criminal defendants have a limited right to determine who represents them in narrow circumstances where such a right does not threaten the ability of lawyers to choose their clients.  See United States v. Gonzalez-Lopez, 548 U.S. at 144 ("To be sure, the right to counsel of choice is 'circumscribed in several important respects.'" (quoting Wheat v. United States, 486 U.S. 153, 159 (1988))).  An indigent criminal defendant has the right to representation by an attorney who is willing to take the case pro bono and not by a court-appointed attorney.  See United States v. Gonzalez-Lopez, 548 U.S. at 144 ("'[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney . . . who is willing to represent the defendant even though he is without funds.'")(quoting Caplin & Drysdale, Chartered v. United States, 491 U.S. at 624-25).

### 3.    **The Right to Self-Representation.**

The Constitution entitles indigent defendants to refuse the assistance of appointed counsel and, instead, to represent themselves.  See Faretta v. California, 422 U.S. 806, 807 (1975)(Stewart, J.)("Faretta");  United States v. Hansen, 929 F.3d 1238, 1248-49 (10th Cir. 2019)("'[T]he Constitution does not force a lawyer upon a defendant.  He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open.'")(quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1946)).  In Faretta, the Supreme Court holds that "a State may [not] constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense."  422 U.S. at 807 (this District Court adds brackets).  The Supreme Court explains:

It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law." Illinois v. Allen, 397 U.S. 337, 350-351 (Brennan, J., concurring).

Faretta, 422 U.S. at 834. The Supreme Court imposes some limits on a criminal defendant's right to self-representation: "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." Faretta, 422 U.S. at 835 (quoting Johnson v. Zerbst, 304 U.S. 458, 465 (1938), and citing Von Moltke v. Gillies, 332 U.S. 708, 723-724 (plurality opinion, Black, J.)). The Supreme Court states that a criminal defendant therefore "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Faretta, 422 U.S. at 835 (quoting Adams v. United States ex rel. McCann, 317 U.S. at 279).

"In the normal course," United States v. Vann, 776 F.3d 746, 763 (10th Cir. 2015), courts "conduct a two-part test to determine whether a defendant has effectively waived his right to counsel," United States v. Williamson, 859 F.3d 843, 862 (10th Cir. 2017). "'First, we must determine whether the defendant voluntarily waived his right to counsel.'" United States v. Hansen, 929 F.3d 1238, 1249 (10th Cir. 2019)(quoting United States v. Williamson, 859 F.3d at

- 14 -

862).  "'[S]econd, we must determine whether the defendant's waiver of his right to counsel was made knowingly and intelligently.'"  United States v. Hansen, 929 F.3d 1238, 1249 (10th Cir. 2019)(quoting United States v. Williamson, 859 F.3d at 862).  See Faretta, 422 U.S. at 835 (stating that "the accused must 'knowingly and intelligently' forgo" those benefits traditionally "associated with the right to counsel" (quoting Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938))).

The first part of the test -- voluntary waiver of a right to counsel --  "turns on whether the defendant's objections to his counsel are such that he has a right to new counsel."  United States v. Taylor, 113 F.3d at 1140 (citing United States v. Padilla, 819 F.2d 952, 955-56 (10th Cir. 1987)).  For the waiver to be voluntary, a court "must be confident the defendant is not forced to make a 'choice' between incompetent counsel or appearing pro se."  United States v. Taylor, 113 F.3d at 1140 (quoting United States v. Silkwood, 893 F.2d 245, 248 (10th Cir. 1989)).  Nevertheless, "'a refusal without good cause to proceed with able appointed counsel is a 'voluntary' waiver.'"  United States v. Taylor, 113 F.3d at 1140 (quoting Maynard v. Meachum, 545 F.2d 273, 278 (1st Cir. 1976)).  "Thus, unless a defendant establishes good cause entitling him to the appointment of new counsel, the defendant's decision to waive counsel will be deemed voluntary."  United States v. Taylor, 113 F.3d at 1140.

The second part of the test -- knowing-and-intelligent waiver of the right to counsel -- "is different from making a wise decision."  United States v. Turner, 287 F.3d 980, 983, 984 (10th Cir. 2002)("A lawyer cannot be forced upon a defendant who wishes to waive his right to counsel even if self-representation would be detrimental.").  "Before a court may grant a waiver, it must ensure the defendant is 'aware of the dangers and disadvantages of self-representation.'"  United States v. Williamson, 859 F.3d at 862 (quoting Maynard v. Boone, 468 F.3d 665, 676 (10th Cir. 2006)).  See Faretta, 422 U.S. at 835.  "[K]nowing and intelligent means only that [a

defendant] was reasonably informed by the court of the hazards of self-representation and had sufficient understanding of those hazards." United States v. Turner, 287 F.3d at 984. See Iowa v. Tovar, 541 U.S. 77, 88-89 (2004)("[B]efore a defendant may be allowed to proceed pro se, he must be warned [by the district court] specifically of the hazards ahead."). The "tried-and-true method" is for a district court to conduct a waiver hearing -- often called a Farretta hearing -- to "ensure[] the defendant is not unwittingly or impulsively disposing of his constitutional right to counsel." United States v. Vann, 776 F.3d at 763 (10th Cir. 2015). At such a waiver hearing, the court determines whether "the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se," United States v. Williamson, 859 F.3d at 862, where the defendant "apprehend[s]" "'the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter," United States v. Weninger, 624 F.2d 163, 164 (10th Cir. 1980)(quoting Von Moltke v. Gillies, 332 U.S. 708, 724 (1948)).[4]

---

[4] These factors are often called the "Von Moltke factors." United States v. Behrens, 551 F. App'x 452, 457 (10th Cir. 2014). See, e.g., United States v. McConnell, 749 F.2d 1441, 1451 n.5 (10th Cir. 1984)(noting that these topics are "taken from the Supreme Court's opinion in Von Moltke"). Further, the Tenth Circuit explains:

> [W]e note that the Supreme Court has intimated that the Benchbook for U.S. District Court Judges provides helpful information regarding topics that are appropriate and important for trial courts to delve into when assessing the knowing and intelligent nature of a defendant's waiver of counsel. See Patterson [v. Illinois], 487 U.S. 285, 300 n.13 (1988)]. And, though neither the Court nor we purport to set out a "precise litany" of questions that are necessary, [United States v. Padilla, 819 F.2d 952, 956 (10th Cir. 1987)]; accord Tovar, 541 U.S. at 88, we would be remiss not to acknowledge, as some of our sister circuits already have, that the Benchbook provides valuable guidance of this type. See United States v. Jones, 452 F.3d 223, 229 (3d Cir. 2006)(noting that a "set" of "model questions derived from" the Benchbook "provide[s] a 'useful framework' in deciding whether a defendant knowingly and voluntarily wishes to proceed pro se" (quoting United

The Supreme Court has emphasized that the requisite thoroughness of the district court's inquiry into the relevant factors should be viewed through a "pragmatic" lens -- that is, the degree of thoroughness should correspond to how "substantial" and "obvious" the dangers of self-representation are at any particular stage of the criminal proceedings.

United States v. Hansen, 929 F.3d at 1250 (quoting Patterson v. Illinois, 487 U.S. 285, 298, 299-300 (1988)). The Supreme Court "require[s] a more searching or formal inquiry before permitting an accused to waive his right to counsel at trial than [it] require[s] for a Sixth Amendment waiver during postindictment questioning." Patterson v. Illinois, 487 U.S. at 299. "[W]arnings of the pitfalls of proceeding to trial without counsel . . . must be 'rigorous[ly]' conveyed." Iowa v. Tovar,

States v. Peppers, 302 F.3d 120, 136 (3d Cir. 2002))); see also United States v. Bankston, 820 F.3d 215, 223 (6th Cir. 2016)(describing the Benchbook as providing a "model inquiry"); United States v. Bell, 901 F.2d 574, 577 (7th Cir. 1990)(stating that "[g]uidelines for the appropriate inquiry are set forth" in the Benchbook).

In particular, as relevant here, we note that the Benchbook specifically provides a line of inquiry reasonably calculated to warn a defendant regarding the obligation to abide by federal procedural and evidentiary rules. Specifically, the current edition of the Benchbook recommends that, during a Faretta hearing, district judges specifically ask: "Do you understand that the rules of evidence govern what evidence may or may not be introduced at trial, that in representing yourself, you must abide by those very technical rules, and that they will not be relaxed for your benefit?" Fed. Judicial Ctr., Benchbook for U.S. District Court Judges 6 (6th ed. 2013)[hereinafter Benchbook]. Likewise, the Benchbook recommends that district judges ask: "Do you understand that those rules [i.e., the Federal Rules of Criminal Procedure] govern the way a criminal action is tried in federal court, that you are bound by those rules, and that they will not be relaxed for your benefit?" Id. Although we reiterate that neither the Supreme Court nor our court has "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel," Tovar, 541 U.S. at 88, . . . accord Padilla, 819 F.2d at 959, the Benchbook underscores -- like the controlling precedent discussed supra --the importance, in securing a knowing and intelligent waiver of the right to counsel, of a court conducting a thorough colloquy with a defendant that is reasonably calculated to ensure that the defendant understands his obligation to adhere to federal procedural and evidentiary rules.

United States v. Hansen, 929 F.3d 1238, 1257-58 (10th Cir. 2019)(footnote omitted)(brackets in the original).

541 U.S. at 89 (quoting Patterson v. Illinois, 487 U.S. at 298).

In addition, a defendant must assert her right to self-representation "clearly and unequivocally" and "in a timely manner." United States v. Callwood, 66 F.3d 980, 983-84 (10th Cir. 1999)(citing United States v. McKinley, 58 F.3d 1475, 1479-80 (10th Cir. 1995); United States v. Reddick, 22 F.3d 1504, 1510 (10th Cir. 1994); United States v. Nunez, 877 F.2d 1475, 1478 (10th Cir. 1989)). Trial courts need not inform defendants of the right to self-representation, unlike the right to counsel, "because 'the right to self-representation does not implicate constitutional fair trial considerations to the same extent as does an accused's right to counsel.'" Munkus v. Furlong, 170 F.3d 980, 983 (10th Cir. 1999)(quoting United States v. Martin, 25 F.3d 293, 295 (6th Cir. 1994)). Accordingly, "a waiver or a termination of the right to self-representation may occur without the defendant's consent or knowledge." Munkus v. Furlong, 170 F.3d 980, 983 (10th Cir. 1999).

"'[A] motion for self-representation is timely if it is made before the jury is impaneled, unless it is a tactic to secure delay.'" United States v. Simpson, 845 F.3d 1039, 1053 (10th Cir. 2017)(quoting United States v. Tucker, 451 F.3d 1176, 1181 (10th Cir. 2006)). Whether such a motion manifests "dilatory intent," turns on "such considerations as the actual delay that would be caused by granting the motion, whether the delay could have been avoided if the defendant had made the request for self-representation earlier, and whether the defendant had good reasons for not making the motion in a more timely manner." United States v. Tucker, 451 F.3d 1176, 1181-82 (10th Cir. 2006). The Tenth Circuit accepts as timely a motion for pro-se representation that the defendant files the day of voir dire but that indicates no intent to delay, see United States v. Tucker, 451 F.3d 1176, 1181-82 (10th Cir. 2006), and rejects as untimely a motion the defendant files six days before trial but that indicates an intent to delay, see United States v. Smith, 413 F.3d

1253, 1281 (10th Cir. 2005)(overruled on other grounds by <u>United States v. Hutchinson</u>, 573 F.3d 1011 (2009)).

A defendant must also "'clearly and unequivocally'" assert her right to self-representation. <u>United States v. Miles</u>, 573 F.3d 832 (10th Cir. 2009)(quoting <u>United States v. Treff</u>, 924 F.2d 975, 978 (10th Cir. 1991)). The rationale for this requirement is twofold: (i) "an *equivocal* demand" supplies "a potential ground for appellate reversal no matter how the district court rules," <u>United States v. Treff</u>, 924 F.2d 975, 979 (10th Cir. 1991)(emphasis in original), and; (ii) "a waiver of the right to counsel should not be lightly inferred," <u>United States v. Miles</u>, 573 F.3d 832 (10th Cir. 2009)(citing <u>Brewer v. Williams</u>, 430 U.S. 387, 404 (1977)). In keeping with these interests, the Tenth Circuit finds a range of conduct insufficiently clear to assert the pro se right. <u>See</u>, <u>e.g.</u>, <u>United States v. Miles</u>, 572 F.3d 832, 837 (10th Cir. 2009)(filing of two pro se motions is "not an unequivocal signal," because "it is not at all uncommon for defendants represented by counsel to submit their own pleadings"). Defendants may assert, however, their right to self-representation at a later stage, even when the defendant does not properly invoke the right to self-representation, or when the defendant rejects the right to self-representation at an earlier stage. <u>See</u>, <u>e.g.</u>, <u>United States v. Pryor</u>, 842 F.3d 441, 450 (6th Cir. 2016)("[D]efendants may assert the right to self-representation later in proceedings, where the assertion is timely and not an attempt to delay or manipulate proceedings.").

### 4.    <u>Waiver of Conflicts of Interest.</u>

It is possible for a criminal defendant to waive his or her right, under the Sixth Amendment, to conflict-free counsel. <u>See</u> <u>Mickens v. Taylor</u>, 535 U.S. at 173 ("In those cases where the potential conflict is in fact an actual one, only inquiry will enable the judge to avoid all possibility of reversal by either seeking waiver or replacing a conflicted attorney."). <u>See also</u> <u>Peretz v. United</u>

States, 501 U.S. 923, 936 (1991)("The most basic rights of criminal defendants are . . . subject to waiver."); United States v. Hunt, 62 F. App'x 272, 276 (10th Cir. 2003)("Nevertheless, a defendant may knowingly and intelligently waive the right to conflict-free counsel.").[5]  To effect a valid waiver, a trial court should "affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel." United States v. Winkle, 722 F.2d at 611 (citing United States v. Garcia, 517 F.2d 272 (5th Cir. 1975)).  A district court "should also determine whether the defendant understands the facts underlying the conflict and the dangers and risks associated with waiving the conflict." United States v. Hunt, 62 F. App'x at 276 (citing Eden v. Hannigan, 87 F.3d 1109, 1118 (10th Cir. 1996)). Where a colloquy does not reflect that the defendant understands those risks, and knowingly and intelligently waives the conflict, the Tenth Circuit holds that there is a Sixth Amendment violation where the conflict adversely affects counsel's performance.  See Eden v. Hannigan, 87 F.3d at 1112, 1118.

---

[5] United States v. Hunt is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The United States Court of Appeals for the Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Hunt and United States v. Behrens, 551 F. App'x 452 (10th Cir. 2014), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

A court can, however, "decline a proffer of waiver, and insist that defendants be separately represented." United States v. Wheat, 486 U.S. at 162.  Courts can refuse proffered waivers "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat v. United States, 486 U.S. at 163.  The Supreme Court explains that,

> while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

Wheat v. United States, 486 U.S. at 159.  Accordingly the defendants' "right to choose their own counsel is circumscribed in several important respects." Wheat v. United States, 486 U.S. at 159.  One such limitation on a defendant's right to counsel of their choice is a federal court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat v. United States, 486 U.S. at 160.  See United States v. McKeighan, 685 F.3d at 968 ("Courts have the duty to 'balance a defendant's constitutional right to retain counsel of his choice against the need to maintain the highest standards of professional responsibility, the public's confidence in the integrity of the judicial process and the orderly administration of justice.'" (quoting United States v. Collins, 920 F.2d 619, 626 (10th Cir. 1990))).  Permitting defendants to proceed with conflicted counsel "'is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court.'" United States v. Wheat, 486 U.S. at 162 (quoting United States v. Dolan, 570 F.2d 1177, 1184 (3d Cir. 1978)).

**ANALYSIS**

The primary issue before the Court is whether Benally may proceed pro se on a temporary basis while he finds new representation, where his current counsel, Ms. Gagan, remains counsel of record and no substitute counsel enters an appearance.  The Sixth Amendment "guarantees a criminal defendant the right to self-representation if he chooses to represent himself."  United States v. Carrillo, 161 F. App'x 790, 792 (10th Cir. 2006)(citing Faretta v. California, 422 U.S. at 819).  To waive his right to counsel Benally must intentionally relinquish or abandon a known right or privilege.  See United States v. Hamett, 961 F.3d 1249, 1255-54 (10th Cir. 2020)("Hamett")(stating that a waiver "must be 'an intentional relinquishment or abandonment of a known right or privilege'" (quoting United States v. McConnell, 749 F.2d at 1450-51)).  The Court concludes that Benally's request does not constitute a clear-and-unequivocal waiver of his right to counsel.  Accordingly, the Court denies the Motion and the Request without prejudice, and Ms. Gagan continues to represent Benally unless and until substitute counsel appears.

Benally does not intentionally waive this right to counsel, and he accepts the counsel that the Court appoints in the interim while he finds new representation.  Benally does not waive voluntarily his right to counsel.  In the Motion, Benally requests to proceed pro se.  See Motion at 1.  However, when the Court asks Benally if he "really want[s] to proceed pro se," he denies wanting to proceed without representation.  2026 Tr. at 13:3-5 (Court).  This statement does not meet the Tenth Circuit's standard of "an intentional relinquishment or abandonment of a known right or privilege."  Hamett, 961 F.3d at 1255.  Benally seeks to maintain his right to counsel, merely requesting new counsel.  See 2026 Tr. at 13:6-7 (Benally)("No, Your Honor I wanted to

proceed pro se pending, I'm in the process of getting a private attorney.").[6]  The Court denies the

Motion without prejudice.  If Benally later elects to proceed fully pro se and makes a clear,

unequivocal, knowing, and intelligent waiver of counsel, he may renew his request.  At present,

however, his conditional request does not satisfy the Tenth Circuit's two-prong standard.

Accordingly, the Court denies the Motion and the Request without prejudice.

**IT IS ORDERED** that: (i) the "Marsden Motion" and Request to Proceed in Pro Se for

Self-Representation, or Alternatively Substitute Counsel, filed October 16, 2025 (Doc. 107), is

---

[6] Although Benally purports to invoke his Constitutional right to "file Pro Se Pleadings," his testimony before the Court better frames the Motion and the Request as motions to substitute counsel.  Motion at 1.  "'To warrant a substitution of counsel, [a] defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict."  United States v. Porter, 405 F.3d 1136, 1140 (10th Cir. 2005)("Porter")(quoting United States v. Padilla, 819 F.2d 952, 955 (10th Cir. 1987)).  The Motion cites, as good cause, "a major disagreement about how the case should be handled and type of legal strategies to be used."  Motion ¶ 3(a), at 2.  This statement does not constitute good cause for a motion to substitute in the Tenth Circuit.  See Porter, 405 F.3d at 1140 ("'Good cause for substitution of counsel consists of more than a mere strategic disagreement between a defendant and his attorney . . . [. R]ather there must be a total breakdown in communications.'" (quoting United States v. Lott, 310 F.3d 1231, 1249 (10th Cir. 2002))).  Nor does there appear to be a total breakdown in communication between Benally and Ms. Gagan.  See 2026 Tr. at 18:12-14 (Benally)(stating that Ms. Gagan is "a very efficient lawyer"); id. at 17:13-15 (Gagan)(agreeing to "continue representing Mr. Benally throughout this case and . . . [in] any others that may come").

At present, because Benally consents to Ms. Gagan's continued representation, the Court denies the Motion and the Request, without prejudice, to the extent they are motions to substitute counsel.  If Benally is unable to secure private counsel and seeks to file a motion to substitute in the future, the Court will then determine if the Romero v. Furlong, 215 F.3d 1107 (10th Cir. 2000)("Romero"), factors weigh in Benally's favor.  In determining whether there is a complete breakdown in communication, the Tenth Circuit directs

> district court[s] to be guided by the four factors in *Romero*: (1) whether the motion for new counsel was timely; (2) whether the trial court adequately inquired into the reasons for making the motion; (3) whether the defendant-attorney conflict was so great that it led to a total lack of communication precluding an adequate defense; and (4) whether the defendant substantially and unreasonably contributed to the communication breakdown.

United States v. Lott, 433 F.3d 718, 725 (10th Cir. 2006)(citing Romero, 215 F.3d at 1113).

denied without prejudice; and (ii) the Request to Proceed in Pro Se, filed October 16, 2025 (Doc.

108), is denied without prejudice.

_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

Todd Blanche
   Acting United States Attorney General
Ryan Ellison
   First Assistant United States Attorney
Stephen R. Kotz
Eva Mae Fontanez
Matthew McGinley
Michael R. Pahl
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Mallory Margaret Gagan
Gagan Law, LLC
Albuquerque, New Mexico

        *Attorneys for the Defendant*